THE PROPRIETORS OF THE KENNEBEC PURCHASE v. LOWELL & AL.

In a writ of entry, if the land be described by the number of the lot as marked on a certain existing plan, it is sufficient, whether the plan be matter of record or not.

The line of the *Plymouth* patent, as run and marked by *Ballard* in 1795, is conclusive upon the Commonwealth, and upon the patentees, and upon all persons claiming under them.

THIS was a writ of entry, in which the demandants counted on their own seisin and a disseisin by the tenant, of "a certain "lot of land in *Palermo* in said county, being lot numbered 124 "according to a plan made by *Broadstreet Wiggin* surveyor, "containing one hundred and seven acres, more or less,"— without any other description of the premises demanded.

At the trial, which was upon the general issue, the demandants proved a certain lot, called the tenants', to be in *Palermo*, and offered to exhibit to the jury the plan made by *Wiggin*, to prove the number and extent of the lot;—they representing it to be the proprietors' plan, and to have been made by their order. To this evidence the tenants objected as illegal,—but the Judge overruled the objection, and permitted the plan to be exhibited to the jury.

The demandants then read, in support of their title, a deed from the Commonwealth of *Massachusetts* to them, dated *February* 18, 1789. They also read the deposition of *Ephraim Ballard*, who acted as a surveyor of the *Plymouth* patent under a commission signed by the committee for the sale of eastern lands, and by the agent for the plaintiffs, dated *June* 26, 1789, instructing him to begin at the head of the *Waldo* patent, at the distance of fifteen miles from *Kennebec* river, and thence running divers courses therein mentioned, to terminate at a line drawn northeast and southwest across *Androscoggin* river at the distance of five miles northwest from the twenty mile falls; and to make return of his doings as soon as might be to the committee for the sale of eastern lands; and to the clerk of the proprietors. He testified that in the autumn of 1789, in pursuance of those instructions, he surveyed and marked the line therein mentioned; and that in *August* or *September* 1795

he received another joint commission from the Commonwealth of *Massachusetts*, the proprietors of the *Kennebec* purchase, and the late *Gen. Knox* as representative of the *Waldo* claim, instructing him to survey the dividing line between the *Plymouth* and the *Waldo* patents, and the unappropriated lands of the Commonwealth situated between them ;—in pursuance of which he proceeded to execute the service assigned him, and specified his doings ; but before the work was completed he was intercepted by armed men, in disguise, and compelled, by threats of instant death, to desist from farther proceedings ; that they forcibly took from him his instruments, and all his papers except his field book ; of which violence he gave an account to the government.

It was farther proved that in 1806 *Charles Turner*, Esq. was empowered by another commission to examine *Ballard's* line and if found correct, to finish the survey of the easterly line of the *Plymouth* claim ;—that one of the trustees of *Lincoln* academy attended with him at the survey ;—that his admeasurements very nearly coincided with *Ballard's*, varying in one instance only two thirds of a chain in 15 miles ;—that he came out on the south side of the lot demanded, thus including it within the lands of the demandants ;—and that he thereupon extended the line commenced by *Ballard* southward, as the easterly line of the *Plymouth* patent.

It was also proved that *Wiggin*, in making his survey, fronted his lots on *Ballard's* line ; but of the number of the lot demanded, and of the others, there was no evidence except the plan.

On the part of the tenants two witnesses testified to admeasurements made by themselves from *Kennebec* river eastwardly, tending to shew that *Ballard's* admeasurement of fifteen miles was too large ; but the course they ran from the river was uncertain.

It was admitted that in 1806 the *Lincoln* academy received a grant from the Commonwealth of the land bounded on the *Plymouth* patent, and the tenants offered in evidence a deed of the demanded premises from the academy to themselves.

The tenants contended that it ought to be left to the jury, upon this evidence, to determine whether the demanded premises were within the limits of the *Plymouth* patent ;—but the.

Judge instructed the jury that the line run by *Ballard* was conclusive on the tenants, and they thereupon returned a verdict for the demandants. And it was agreed that if the direction of the Judge on the foregoing facts, so far as they were competent evidence, and the admission of the plan, were right, judgment should be entered on the verdict,—otherwise, it should be set aside and a new trial be granted.

The argument was had at the last term in this county by *R. Williams*, for the demandants, and *Orr* and *Stebbins*, for the tenants.

*Stebbins*, for the tenants, argued,—1st. That the line run by *Ballard* was not conclusive on the parties;—and 2d. That the plan made by *Wiggin* ought not to have been admitted in evidence to the jury.

As to the *first* point;—it does not appear by *Ballard's* deposition what lines he ran, nor that he *completed* any. And after he had surveyed the whole, he might have found it necessary to have altered some part of it. Nor was any person bound by what he or *Turner* did ;—not the Commonwealth, nor the *Kennebec* proprietors, for *Ballard* made no report to them of his doings in 1795—nor the trustees of *Lincoln* academy, for *Turner* gave them no notice of his intended survey in 1806.

As to the *plan* ;—the description in the writ is too loose and uncertain. The plan, to become part of a deed, ought to be a *public* document, to which all the citizens may have access. But this was a mere private paper, in the pockets of the demandants. If judgment be entered on the verdict, and a writ of possession issue, the sheriff could not find the land by the description given. If the disseisor must shew *distinctly* the extent of his possession, the demandant, by the same reason, must shew as *clearly* the extent of his claim. By the common law and by the statute, the tenant has a right to plead several pleas, which will be taken away unless the land be *described* to him, with *certainty*. Any other rule places him wholly at the mercy of the demandant. 2 *Selw. N. P.* 624 and authorities there cited. 5 *Com. Dig.* 32. *Bott v. Burnell*, 11 *Mass.* 165.

*R. Williams*, for the demandants.

Whether the description be certain or not, this is not the time to inquire. The tenants should either have demurred, or moved in arrest of judgment. Under the issue of *nul diseisin* that question is not open. Nor is here any hardship on the tenants. They may always defend *their own* land by metes and bounds, and disclaim all other ; and this, be the description in the writ what it may.

The true question is—whether a writ of entry lies for " a *lot* "of land, No. 124, containing 107 acres;"—and we contend that it does. Our *lots* of land very soon acquire a reputation by their *numbers ;* by which they are as well known as lands in *England* are by the names mentioned in the books. And the uniform practice agrees with this mode of designation, and reference to a plan. 2 *Selw. N. P.* 729. 2 *Bac. Abr.*: 419, *Ejectment D.* 2. *in notis: Impey's Practice*, 578, 582. The description needs not to be so certain as that the sheriff can find the land ;—the demandant must shew it at his peril.

And the plan was rightly admitted. This was not a question of boundaries, but of identity of lots. There was no doubt made as to the genuineness of the plan ;—and supposing it to be mere chalk, yet it was sufficient for the purpose it was used for.

As to the conclusiveness of the line run by *Ballard* ;—this depends on the question whether it is competent for two adjoining proprietors to agree on a dividing line. For this location was a matter of compromise between the government and the *Plymouth* company, and they alone were interested in its location. It was binding on them as far as it was run, and no other persons have a right to contest it. No return was required of the surveyor by the second commission in 1795,—of which his deposition was the best evidence, the original being taken from him and destroyed.

But whether conclusive, or not,—there was a line *de facto*, made in 1795 ; and it was a limit well known and defined, and long acquiesced in. By this limit the trustees of *Lincoln* academy were bounded, by the conveyance to them in 1806 ; and as to *them* it has the force of a known monument, beyond which they and the tenants, being their grantees, cannot pass. *Jack-*

Prop'rs of the Kennebec Purchase *v*. Lowell.

*son v. Williams*, 2 *Johns*. 297. 3 *Johns*. 8. 11 *Johns*. 123. *Jackson v. Ogden*, 7 *Johns*. 238. *Makepeace v. Bancroft*, 12 *Mass*. 469. *Peake's Ev*. 27.

*Orr*, in reply.

Had *Ballard* completed the execution of his commission, or had the government expressly accepted his doings as far as they went, it would have been conclusive. But here was neither. And the acquiescence of the government is not to be inferred from its silence, as in the case of a private person.

As to the plan ;—it was incompetent evidence. It does not appear that it was taken by *Wiggin*, nor that he made a survey, nor that the lot in controversy and that marked 124 on the plan are the same. All this was presumed, and therefore wrong.

The only certainty in the description is " No. 124," referring to a plan ;—and the action is in tort. Now in a *personal* action of trespass or trover for goods, a reference to a schedule annexed is bad and judgment may be arrested,—*Kinder v. Shaw & al.* 2 *Mass*. 398—*a fortiori* here, in a real action ;—for what better is the plan referred to, than a schedule annexed ? If it be otherwise, a party may make his plan after commencing his suit, and prove his case by a paper of his own fabrication.

MELLEN C. J. delivered the opinion of the Court as follows.

The counsel for the tenant relies on two objections to the verdict.

1. That the description of the premises was too loose and uncertain ; depending on, and referring to a plan of a private nature, and which was improperly admitted in evidence in aid and explanation of the description.

2. That the opinion and instruction of the Judge to the jury as to the conclusiveness of *Ballard's* line was incorrect.

As to the *first point*.—It may be a question whether the plan was a necessary piece of evidence ; and if not necessary, its admission, whether proper or not, would be no ground for a new trial.—The more correct and usual mode of taking advantage of the alleged uncertainty would seem to be either by demurrer or motion in arrest of judgment. *Ward v. Harris*, 2 *Bos. & Pul*. 265. 1 *East*. 441. 8 *East*. 357. But the tenant has

pleaded the general issue and thereby *admitted himself in possession of the premises demanded, whatever and wherever they are situate,* and put the title only in issue. *Higly v. Price,* 5 *Mass.* 344. *Brown v. Killeran,* 4 *Mass.* 443. *Pray v. Pierce,* 7 *Mass.* 381. Several of the cases cited by the demandant's counsel establish the principle that the demandant must cause his writ of possession to be executed at his peril. If he should take possession of lands not recovered by the judgment, he would be a trespasser. If he can find no land answering the description in the writ, judgment, and *habere facias,* he cannot cause the precept to be executed with any safety; and of course the tenant in the action can never be disturbed or injured by the judgment.

The cases touching the question of *certainty* in declarations in the description of premises demanded, and property taken away or injured, are somewhat confused and contradictory. In *Rex v. Horne, Cowp.* 682. *Ld. C. J. De Grey* says;— " we have no precise idea of the signification of the word " cer- " tainty," which is as indefinite in itself as any word that can " be used." In *Ward v. Harris,* 2 *Bos. & Pul.* 265, the plaintiff declared upon the sale of a *certain* house for a *certain* quantity of *certain* oil to be delivered to the defendant within a *certain* time.—Even this loose declaration was holden good after verdict, on motion in arrest of judgment. In *Doe v. Plowman,* 1 *East.* 441, the plaintiff in ejectment demanded *two dwelling-houses* and *two tenements.*—After verdict for the plaintiff judgment was arrested. In *Doe v. Denton,* 1 D. & E. 11, ejectment for a *messuage and tenement* was held good after verdict. *Cottingham v. King,* 1 *Burr.* 621. *Lord Mansfield* says, " The objection is the uncertainty of the claim or *description of* " *the premises.*—It is after verdict;—the title has been tried by " jury;—evidence has been given to them on which they have " found for the plaintiff." The description was much more general than in the present case. The judgment was unanimously affirmed; the Court observing that *after verdict,* the description must be intended to be sufficient. See the several cases cited in the note to *Doe v. Plowman,* 1 *East.* 441, agreeing with, and opposing the case in 1 *Burr.* 621. The description in the present case is at least as certain as that cited from *Impey's*

*Practice.* That was "a certain messuage demised by *J. S.* to *J. D.*" who must have been either the demandant himself, or a stranger; and in either case, there was no reference to any public record or document for the tenant's information; though it might be a guide to the sheriff in executing the writ of possession. But if a reference to *Wiggin's* plan, for the number, size and situation of the lot, be necessary to render the description sufficient, of what importance can it be whether the plan has been accepted by the proprietors, or placed on their records, or on any other record? Nothing is more common than in real actions to demand land by no other description than as a lot of a certain number on a certain plan. As, for instance, *M'Kecknie's* plan, *Winslow's* plan, or *Jones'* plan. This has always been deemed sufficient; and yet it never appeared on the face of the declaration whether the plan was accepted and recorded, or not. The description of the premises demanded in this action was intelligible to the tenant; his plea admits him to be in possession of lot *No.* 121, on *Wiggin's* plan, containing 107 acres. The parties, therefore, agree as to the lot of land demanded, and only differ upon the question of title. As to the admission of the plan in evidence to the jury, we perceive no incorrectness in the decision of the Judge. The report states that the plan offered was *Wiggin's plan;* and that it was proved that *Wiggin*, in making his survey, fronted his lots upon the *Ballard* line; which is one of the boundary lines of one part of the tract which the demandants own. The plan and the *survey* thus taken in connection, must both be considered as made by him and for their use.

It is therefore sufficiently shewn to be the demandants' plan; and seems to be legal proof as much as any of their plans which have been formally accepted. In this action they claim an interest in it, and rights under it, and thereby sanction it. We therefore are of opinion that the tenant has failed in maintaining his *first* objection.

As to the *second* point, the conclusiveness of *Ballard's* line, it may be observed that in the year 1795, when it was run, no persons had any interest in the lands, but the *Plymouth Company* on one side, and the *Commonwealth* on the other. The line was not completed, on account of the violence he met with from the

settlers, and the loss of most of his papers. But he informed the government of the progress he had made. In 1806; *Turner* was employed to complete the survey, if on examination, he found *Ballard's* line correct. He did *examine* it, and *so find it ;* and began to extend *his own* line from it southerly, as the easterly line of the patent. According to the line thus run by *Ballard* and continued by *Turner,* the land demanded is within the company's claim. We hear of no objection to this line on the part of the Commonwealth; and the proprietors, who are the demandants in this action, are satisfied with it, and claim according to it. Here is evidence of an acquiescence in the line as the true one, and even of its sanction by the parties in interest at the time. The deed from the Commonwealth's committee bounds the academy land, on one side, on the *Plymouth claim,* and this deed was given years after *Ballard's* line was run, which the Commonwealth afterwards recognized, in the manner above mentioned, as the true boundary line of that claim. The cases cited from *Johnson's* reports by the demandants' counsel to shew the effect of lines thus established, and their conclusiveness, are strong and direct.

On the whole, when we view all the facts in the case before us, and the manner in which the line in dispute was run and established by two different surveyors, we have no hesitation in saying that upon these facts in the case, as reported by the Judge, the line must be considered so established as to be conclusive. We are satisfied with the opinion of the Judge who tried the cause, with respect to this question, and perceive no reason for setting aside the verdict and granting a new trial.—Accordingly there must be

                                    *Judgment on the verdict.*